IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UPMC d/b/a UNIVERSITY OF** | ) | **Case No. 3:16-cv-204** |
| **PITTSBURGH MEDICAL CENTER, and** | ) | |
| **UPMC ALTOONA f/k/a ALTOONA** | ) | **JUDGE KIM R. GIBSON** |
| **REGIONAL HEALTH SYSTEM,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CBIZ, INC., CBIZ BENEFITS &** | ) | |
| **INSURANCES SERVICES, INC., and** | ) | |
| **JON S. KETZNER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Pending before the Court is the Motion to Compel (ECF No. 75) filed by Defendants CBIZ, Inc., CBIZ Benefits & Insurance Services, Inc., and Jon S. Ketzner (collectively "CBIZ"). CBIZ's Motion has been fully briefed (*see* ECF Nos. 75-1, 83, 86, 89, 92, 93, 100) and is ripe for disposition.

This case arises from Plaintiff UPMC's acquisition of Plaintiff Altoona Regional Health System ("Altoona")—an acquisition which allegedly came with a multimillion dollar negligent understatement of Altoona's pension plan liabilities. In the instant Motion to Compel, CBIZ asks this Court to order Plaintiffs to produce certain documents relating to Plaintiffs' communications with the Internal Revenue Service ("IRS") and other agencies. Plaintiffs respond by arguing that they have produced all relevant, responsive, and non-privileged communications requested by CBIZ. However, CBIZ disagrees that the communications in question are protected by either the attorney-client privilege or the work-product doctrine.

For the reasons that follow, CBIZ's Motion to Compel (ECF No. 75) will be **GRANTED**.

## II.     Jurisdiction and Venue

UPMC is a Pennsylvania nonprofit corporation with its principal place of business in Pittsburgh, Pennsylvania. (ECF No. 81 ¶ 1.) Altoona is likewise a Pennsylvania nonprofit corporation, with its principal place of business in Altoona, Pennsylvania. (*Id.* ¶ 2.) Plaintiffs allege that CBIZ, Inc. is a Delaware corporation with its principal place of business in Cleveland, Ohio, that CBIZ B&I is a Missouri corporation, and that Ketzner resides in Maryland. (*Id.* ¶¶ 4-7.) Plaintiffs seek damages "well over" $100 million. (*Id.* at 10.) Thus, this case is between citizens of different states and the amount in controversy exceeds $75,000. This Court, therefore, has subject-matter jurisdiction over plaintiffs' claims under 28 U.S.C. § 1332(a)(1).

Because a substantial part of the alleged events giving rise to Plaintiffs' claims occurred within the Western District of Pennsylvania, venue is proper in this district under 28 U.S.C. § 1391(b)(2).

## III.     Relevant Background

The Court previously detailed the procedural and factual background of the instant case in its Memorandum Opinion denying Defendants' Motion to Dismiss. *See UPMC v. CBIZ*, Case No. 3:16-cv-204, 2017 WL 4357984, at *1-*3 (W.D. Pa. Sept. 29, 2017) (Gibson, J.). Thus, the Court primarily relies on this prior coverage of this case's background and will not repeat those details herein. However, the Court will provide some additional background particularly pertinent to the present Motion to Compel.

In their original Complaint, Plaintiffs alleged that the IRS and the Pension Benefit Guaranty Corporation ("PBGC") "may" impose significant penalties on Plaintiffs due to CBIZ's

alleged negligence. (ECF No. 1 ¶¶ 57-59.) In deciding CBIZ's Motion to Dismiss, the Court was persuaded that, under the federal standard applicable to motions to dismiss, Plaintiffs' allegations of penalty damages were sufficiently definite to state a claim upon which relief could be granted because only the *amount*—not the existence—of the penalties remained unliquidated. *See UPMC*, 2017 WL 4357984, at *8. However, Plaintiffs now concede that no such penalty damages exist and have, accordingly, filed an Amended Complaint that omits a request for these penalty damages. (*See* ECF Nos. 81, 89.)

The crux of the instant Motion to Compel—filed on January 1, 2018—has evolved throughout the briefing of this issue and centers around documents and communications regarding these previously alleged IRS and PBGC penalties. Specifically, CBIZ seeks to compel responses to document request numbers 106, 107, and 109-112. (*See* ECF Nos. 75-1 at 2-4, 75-3 at 1.)

Initially, the resolution of this Motion to Compel revolved around whether these communications remained relevant subsequent to Plaintiffs' filing of their Amended Complaint without penalty-specific damages. (*See* ECF Nos. 75, 76, 86, 89.) However, in an only two-page response filed on February 1, 2018, Plaintiffs contended that CBIZ's Motion to Compel is now moot because "[o]n January 31, 2018, UPMC produced to CBIZ the sole responsive, non-privileged communication with the IRS that UPMC had yet to produce in response to CBIZ's requests" and that "UPMC does not possess any communications with the PBGC." (ECF No. 83 at 1.)

On February 8, 2018, CBIZ responded by stating that Plaintiffs had, up until its February 1, 2018 response, never offered any basis for its non-production other than lack of relevancy. (ECF

No. 86 at 2.) CBIZ further argued that the only documents that Plaintiffs have produced are the initial request to the IRS and the IRS's final ruling. (*Id.*) CBIZ also suggested that Plaintiffs' cursory and vague allusions to attorney-client privilege and the work-product doctrine are insufficient to meet Plaintiffs' burden to establish the applicability of those protections. (*Id.*) Shortly thereafter, on February 9, 2018, the Court ordered Plaintiffs to "file a brief and/or any other appropriate support for their assertion of privilege on or before February 23, 2018" and granted CBIZ leave to respond to any such filings on or before March 9, 2018. (ECF No. 87.)

On February 23, 2018, Plaintiffs filed what amounts to a less than three-page brief, providing perfunctory argument as to the applicability of attorney-client privilege and the work-product doctrine to the IRS communications in question. (ECF No. 89.) Disputing Plaintiffs' arguments, CBIZ filed a thirteen-page Supplemental Brief and 145 pages of exhibits on March 9, 2018. (ECF No. 92.) Lastly, after seeking leave of Court, Plaintiffs filed a five-page Supplemental Brief responding to CBIZ's Supplemental Brief on March 26, 2018. (ECF No. 100.)

## IV.    Discussion

As stated *supra*, CBIZ asks this Court to order Plaintiffs to produce documents in response to discovery request numbers 106, 107, and 109-112. (*See* ECF Nos. 75-1 at 2-4, 75-3 at 1.) The primary content of the discovery sought by CBIZ is communications involving UPMC, Plaintiffs' attorneys, Ernst & Young, and the IRS in connection with the resolution of potential fines, penalties, and taxes resulting from CBIZ's allegedly misstated actuarial valuations of Altoona's pension liabilities. (*See* ECF No. 89.) The Court notes that, hereinafter, the discovery sought by CBIZ in the instant Motion to Compel—i.e., that discovery sought by discovery request numbers 106, 107, and 109-112—will be referred to as "the penalty information."

-4-

The Court will first address the preliminary issue of the continuing relevancy of this discovery after Plaintiffs amended their Complaint to exclude damages claims in relation to these fines, penalties, and taxes. The Court will then analyze the applicability of the attorney-client privilege and the work-product doctrine to the discovery sought by CBIZ.

## A. Plaintiff's Relevancy Arguments Appear to Have Been Withdrawn and, Regardless, are Ineffectual

### 1. Legal Standard

Federal Rule of Civil Procedure 26 provides the general framework for discovery in federal civil litigation. *See* Fed. R. Civ. P. 26. Rule 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." *See* Fed. R. Evid. 401. In determining whether discovery is proportional to the needs of the case, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(l).

Rule 37 provides the mechanism to compel discovery from a person or party who refuses to provide discovery. *See* Fed. R. Civ. P. 37. The party moving to compel discovery under Rule 37 bears the initial burden of proving the relevance of the material requested. *See UPMC v. CBIZ, Inc.*, Case No. 3:16-cv-204, 2017 WL 4129654, at *2 (W.D. Pa. Sept. 15, 2017) (Gibson, J.) (citing *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001)). If the movant meets this initial

burden, then the burden shifts to the person resisting discovery to establish that discovery of the material requested is inappropriate. *Id.* (citing *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996)). The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient. *See id* (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982)).

### 2.    Analysis

Initially, Plaintiffs argued that CBIZ's present Motion to Compel should be denied because the penalty information is no longer relevant and, thus, is not discoverable information after the Plaintiffs filed their Amended Complaint on January 29, 2018. (*See* ECF Nos. 81, 83, 89.) Plaintiffs' basis for this argument is that their Amended Complaint omits their prior request for penalty damages, therein purportedly making information regarding the penalty damages irrelevant. (*See* ECF Nos. 81, 83, 89.)

Plaintiffs now appear to have withdrawn their relevancy objection. (*See* ECF Nos. 83, 89, 93 at 2.) However, to any extent Plaintiffs may still contend that the penalty information is no longer relevant following the filing of the Amended Complaint, the Court disagrees with Plaintiffs and easily holds that the penalty information is relevant, regardless of the omission of penalty damages in the Amended Complaint.

In their Amended Complaint, Plaintiffs allege that Defendant Jon S. Ketzner ("Mr. Ketzner"), a CBIZ, Inc. and CBIZ B&I, Inc. employee, negligently miscalculated Altoona's pension liabilities by failing to adhere to actuarial standards of practice. (*See generally* ECF No. 81.) Thus,

Plaintiffs can scarcely deny the relevancy of communications and information about Mr. Ketzner's actuarial valuations of Altoona.

Regardless of whether Plaintiffs seek damages for penalties, communications between UPMC, Altoona, their agents, and the IRS that relate to Mr. Ketzner's alleged failure to adhere to the requisite standard of care clearly have at least "any tendency to make a fact more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. This overarching relevancy as to CBIZ and Mr. Ketzner's alleged wrongdoing is not contingent upon the inclusion of a request for penalty-specific damages. For example, if the IRS determined that Mr. Ketzner's actuarial work product, methods, and assumptions were appropriate and consistent with the actuarial standards and the Tax Code's requirements, such a conclusion is relevant to Plaintiffs' claims that Mr. Ketzner's conduct breached the applicable standard of care.

Looking more closely at the allegations of the Amended Complaint, Plaintiffs allege that Mr. Ketzner's work related to federal law and regulations and that he failed to comply with those laws and regulations. (*See, e.g.*, ECF No. 81 ¶¶ 10, 19-20, 24, 31, 57-60, 66.) Therefore, communications that the IRS and other agencies had with Plaintiffs and the IRS's conclusions regarding CBIZ and Mr. Ketzner's alleged non-compliance with federal laws and regulations are clearly relevant.

Moreover, as CBIZ highlights, the penalty information is relevant to Plaintiffs' claims on numerous other grounds. (*See* ECF No. 76 at 6.) For example, the penalty information relates to UPMC's ongoing obligations under Altoona's pension plans, the transition of Altoona's pension plans into UPMC's pension plans, and Mr. Ketzner's valuations. (*See id.*) While the Court will not belabor this point further by listing additional ways the penalty information is relevant *ad*

*nauseam*, this Court concludes that the penalty information easily falls within the permissible scope of discovery under the Federal Rules of Civil Procedure and satisfies the definition of relevancy provided by the Federal Rules of Evidence. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401.

Plaintiffs' amendments to their Complaint do not nullify the relevancy of the penalty information. Simply put, the penalty information has a tendency to make facts material to remaining claims and requests for relief included within the Amended Complaint more or less probable. *See* Fed. R. Evid. 401. CBIZ has met its initial burden under Rule 37 to prove the relevance of the material requested, *see UPMC*, 2017 WL 4129654, at *2 (citing *Morrison*, 203 F.R.D. at 196), and Plaintiffs have failed to demonstrate that the penalty information is otherwise inappropriate material for discovery, *see id.* (citing *Momah*, 164 F.R.D. at 417). Consequently, this Court holds that the penalty information is relevant and falls within the permissible scope of discovery.

**B.  Plaintiffs Have Failed to Meet Their Burden to Show that the Communications Sought by CBIZ Are Protected by Attorney-Client Privilege**

**1.  Legal Standard**

The attorney-client privilege "protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) (citation omitted); *Parisi v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 3:16-179, 2017 WL 4403326, at *2 (W.D. Pa. Oct. 2, 2017) (Gibson, J.). The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests

in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

"A federal court sitting in diversity must look to state law for the applicable legal principles on issues of privilege." *Parisi*, 2017 WL 4403326, at *4 (citing *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 280 (W.D. Pa. 2014)). Under Pennsylvania law, the party seeking to invoke attorney-client privilege must establish four elements:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

*Bousamra v. Excela Health*, 167 A.3d 728, 735 (Pa. Super. Ct. 2017) (quoting *Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs.*, L.P., 108 A.3d 54, 62-63 (Pa. Super. Ct. 2015)) (internal citations omitted); *see also Walter v. Travelers Pers. Ins. Co.*, No. 4:12-CV-346, 2013 WL 2252729, at *3 (M.D. Pa. 2013) (quoting *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007)) (stating that the attorney-client privilege applies to "(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.").

"[I]n Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011).

Thus, "[t]he privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client." *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, No. 3:16-CV-2470, 2017 WL 2480588, at *5 (M.D. Pa. 2017). "To this end, the Supreme Court has explained that 'the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Id.* (citing *Upjohn*, 449 U.S. at 390).

"[W]hen the client is a corporation, the privilege extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf." *Red Vision*, 108 A.3d at 60 (quoting *Pennsylvania State University v. W.C.A.B. (Sox)*, 83 A.3d 1081, 1092 (Pa. Commw. Ct. 2013)).

Most pertinent in the present case, the party asserting the applicability of attorney-client privilege—in this case, Plaintiffs—bears the burden to show that the withheld documents are privileged. *See Mine Safety Applicanes Co. v. N. River Ins. Co.*, 73 F. Supp. 3d 544, 569 (W.D. Pa. 2014) ("[P]arty seeking the protection [of privilege] has the burden of proving the doctrine applies."). "A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *Parisi*, 2017 WL 4403326, at *4; *Endeavor Energy Res., L.P. v. Gatto & Reitz, LLC*, No. 2:13CV542, 2017 WL 1190499, at *13 (W.D. Pa. 2017) (citing *Smithkline v. Beecham Corp. et al.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005)).

A party's "threadbare and conclusory invocations" of privilege are insufficient. *Parisi*, 2017 WL 4403326, at *8. Rather, claims of privilege "must be asserted document by document,

rather than as a single, blanket assertion." *United Sates v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990); *see In re Human Tissue Prod. Liab. Litig.*, 255 F.R.D. 151, 163 (D.N.J. 2008) (stating that a party seeking to shield documents "has the burden of establishing each of the[] elements on a document by document basis.").

## 2. Analysis

Plaintiffs have failed to satisfy their aforementioned burden to show the applicability of the attorney-client privilege to the penalty information in this case. *See supra* Part IV.B.1. To the contrary, despite Plaintiffs being ordered by this Court to "file a brief and/or any other appropriate support for their assertion of privilege" (ECF No. 87), the *only* support Plaintiffs have presented to this Court for their assertion of privilege is two perfunctory briefs, which amount to less than eight total pages of double-spaced argument and citations to distinguishable case law. (*See* ECF Nos. 89, 100.) Therefore, Plaintiffs have failed to demonstrate that attorney-client privilege protects them from their obligation to produce the requested penalty information.

Plaintiffs have not presented this Court with a privilege log, have not offered any persuasive explanation of how communications between and/or with Ernst & Young and the IRS are protected by attorney-client privilege, and have not shown how these communications between and/or with Ernst & Young and the IRS were in furtherance of their counsel's representation of them and the provision of legal services. Even if some of the requested discovery is hypothetically protected by attorney-client privilege, Plaintiffs have failed to identify any specific documents or groups of documents and failed to establish why privilege attaches to any designated and identifiable documents. Thus, Plaintiffs' failure to offer any showing as to

-11-

the applicability of the attorney-client privilege beyond merely conclusory statements in their briefs is insufficient to meet their burden.

As discussed *supra* Part IV.B.1, "[t]he burden of establishing the elements of the privilege can be met only by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory or *ipse dixit* assertions." *Wise Inv., Inc. v. Brady Contracting, Inc.*, No. Civ. 01-3458, 2002 WL 31955990, at *2 (E.D. Pa. Oct. 23, 2002) (citing *Green, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, LLC*, 2002 F.R.D. 418, 423 (E.D. Pa. 2002)). "Rather, a party claiming the privilege must present record evidence, such as affidavits, and sufficient facts to bring the communication at issue within the narrow scope of privilege." *Id.* (citing *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 688 (E.D. Pa. 1986).

Here, Plaintiffs attached only one exhibit to their short briefs: their contract with Ernst & Young, which does little to establish the applicability of attorney-client privilege to the non-specific documents at issue here and does not necessarily demonstrate the actual scope, purpose, and course of conduct of Ernst & Young's employment. (*See* ECF No. 101.) Plaintiffs did not provide this Court with a privilege log, affidavits, or other competent evidence. In short, Plaintiffs have simply failed to make any showing that the attorney-client privilege applies to the penalty information.

Briefs that are effectively less than eight pages with only conclusory statements and citations to distinguishable case law are insufficient supporting evidence to establish that discovery is privileged. *See, e.g., Paramount Fin. Commc'ns, Inc. v. Broadridge Inv'r Commc'n Sols., Inc.*, Civil Action No. 15-405, 2016 WL 5404462, at *4 (E.D. Pa. Sept. 28, 2016) (ordering documents to be produced because, "while defendant provided plaintiffs with a privilege log which

identifies the Twenty-Four Documents as privileged, defendant has offered no affidavit or other evidence in support of its burden of proof on the privilege issue."); *Lefta Assocs. v. Hurley*, Civil No. 1:09-CV-2487, 2011 WL 2456616, at *9 (M.D. Pa. June 16, 2011) (ordering documents to be produced because "neither [the attorney] nor Plaintiffs explain[ed] adequately, or persuasively, as to how the Talking Points Notes reflect or demonstrate any protected attorney-client communications."); *Wise*, 2002 WL 31955990, at *3 (ordering documents to be produced because party seeking to assert privilege did "not provide any additional evidence other than the conclusions asserted in its pleadings.").

Additionally, even had Plaintiffs made a showing that some of the penalty information is protected by attorney-client privilege—which they have not, the attorney-client privilege is "construed narrowly and "protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Westinghouse Elec. Corp v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *see Gillard v. AIG Ins. Co.*, 15 A.3d 44, 52 n.8 (Pa. 2011) (stating that the "central requirement [of attorney-client privilege is] that communications be for the purpose of securing or providing professional legal services."); *Office of Governor v. Davis*, 122 A.3d 1185, 1192 (Pa. Commw. Ct. 2015) (stating that "privilege only applies where the client's ultimate goal is legal advice.").

Based on this Court's skimming of the over 1,500-item privilege log submitted to this Court by CBIZ—not Plaintiffs, many of the documents withheld by Plaintiffs relate to UPMC's mandatory IRS approval request—not counsel's advice to UPMC—and many do not even have an attorney listed on the privilege log. (*See* ECF No. 92-2.) Even had Plaintiffs—rather than

CBIZ—presented this privilege log to the Court, the information contained on the privilege log is insufficient to determine whether the privilege attaches and Plaintiffs failed to make any document-specific arguments or isolate groupings of the over 1,500 items on the privilege log. *See Novak v. Somerset Hospital*, 3:07-cv-304, 2012 WL 12887720, at *1 (W.D. Pa. May 3, 2012) (stating that courts should decline to parse through the many documents in a privilege log because such advocacy and effective presentation of the privilege log and the underlying documents is the role of counsel). And, Plaintiffs never even reference or make any arguments based on the privilege log that CBIZ filed with this Court. Consequently, Plaintiffs have failed to meet the standard required to establish the applicability of attorney-client privilege. *See supra* Part IV.B.1.

The most cogent argument made by Plaintiffs regarding to the purportedly privileged nature of the penalty information is that Ernst & Young had a "*Kovel* arrangement" with Plaintiffs' counsel. (*See* ECF No. 89 at 2; ECF No. 100.) For the reasons stated *infra*, this argument is moot because Plaintiffs have failed to present any competent evidence in support of the applicability of attorney-client privilege and failed to indicate any specific documents to which this "*Kovel* arrangement" applies. Regardless, Plaintiffs' representation of so-called *Kovel* arrangements is far too broad. *See United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) (discussing the narrow, potential extension of attorney-client privilege to contractors and consultants).

*Kovel* does not provide for a blanket extension of attorney-client privilege to all agents hired by counsel. Namely, *Kovel* does not apply to communications about business functions that are not necessary for the purpose of attaining legal advice. *See, e.g., Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d 225, 229 (D. Mass. 2010) (holding that communications between client's investment bankers and counsel were not privileged where investment bankers acted in business

capacity and were not necessary or indispensable for counsel to provide legal advice); *La. Mun. Polic Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 312-14 (D.N.J. 2008) (same); *see also Bousamra v. Excela Health*, 167 A.3d 728 (Pa. Super. Ct. 2017); *United Sates v. Adlman*, 68 F.3d 1495 (2d Cir. 1995); *Legends Mgmt. Co., LLC v. Affiliated Ins. Co.*, 2017 WL 4227930 (D.N.J. Sept. 22, 2017); *Town of Georgetown v. David A. Bramble, Inc.*, 186 F. Sup. 3d 326 (D. Del. 2016);

Furthermore, attorney-client privilege does not attach under so-called *Kovel* arrangements when an advisor or consultant's services or advice is sought "rather than the lawyer's." *Cottillion United Refining Co.*, 279 F.R.D. 290, 299 (W.D. Pa. 2011) (quoting *Kovel*, 296 F.2d at 922)). "[W]hen the third party is a professional, such as an accountant, capable of rendering advice independent of the lawyer's advice to the client, the claimant must show that the third party served some specialized purpose facilitating the attorney-client communications and was essentially indispensable in that regard." *Cellco P'ship v. Certain Underwriters at Lloyd's London*, Civil Action No. 05-3158(SRC), 2006 WL 1320067, at \*2 (D.N.J. May 12, 2006) (quotation omitted); *United States v. ChevronTexaco Corp.*, 241 F. Sup. 2d 1065, 1072 (N.D. Cal. 2002) (stating that privilege does not attach where accountant is hired, not as "translator," but to give legal advice about tax code, even if advice assists attorney).

In essence, under *Kovel*, the attorney-client privilege can only be extended to third party advisors, contractors, and consultants when that agent is necessary to "translate" or "interpret" information for the attorney to allow the attorney to provide legal advice. *Kovel*, 206 F.2d at 922. However, privilege does not attach simply because counsel communicates with a third party— such as actuaries, accountants, or federal agencies—to obtain information, seek advice, or attain professional services. *See United States v. Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999) (stating that

gaining information to "better advise" a client is insufficient for attorney-client privilege to attach and that "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorneys' ability to represent the client.").

In the instant matter, the hiring of Ernst & Young by Plaintiffs' counsel to prepare IRS filings does not automatically immunize every communication from production in discovery, and, moreover, Plaintiffs, having filed only perfunctory briefs, have made no showing as to which documents the privilege allegedly applies, or provided any competent evidence beyond their contract with Ernst & Young. *See, e.g., Wychocki v. Franciscan Sisters of Chicago*, No. 10 C 2954, 2011 WL 2446426, at *7 (N.D. Ill. June 15, 2011) (holding that, despite being engaged by counsel, compensation consultant provided business, not legal, advice).

*Kovel* simply does not provide the broad protection that Plaintiffs ascribe to it. For example, "a dual-purpose document—a document prepared for use in preparing tax returns *and* for use in litigation—is not privileged; otherwise, people in or contemplating litigation would be able to invoke, in effect, an accountant's privilege, provided that they used their lawyer to fill out their tax returns." *United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999). In other words, "when a client's ultimate goal is not legal advice, but rather accounting, medical, or environmental advice, the privilege is inapplicable." *In re Grand Jury Matter*, 147 F.R.D. 82, 85 (E.D. Pa. 1992) (holding that documents and communications with attorneys related to preparation of waste management plan to "achieve regulatory compliance" were not privileged and rejecting claim that documents were made for purpose of assisting law firm in providing legal advice).

In fact, the authorities cited in Plaintiffs' own briefs make the narrowness of so-called *Kovel* arrangements and the inapplicability of attorney-client privilege—based on the information presented by Plaintiffs to this Court—even more clear. The cases cited by Plaintiffs show that, in order to maintain attorney-client privilege when communications involve a third party, the third party must be a necessary agent to assist counsel in giving legal advice. *See Serrano v. Chesapeake Appalachia LLC*, 298 F.R.D. 271, 282 (W.D. Pa. 2014) (stating that privilege only protects disclosures necessary to obtain legal advice); *United States v. Schmidt*, 360 F. Supp. 339, 347 (M.D. Pa. 1973) (holding that rendering accounting services was insufficient for privilege to attach); *Cotillion v. United Refining Co.*, 279 F.R.D. 290 (W.D. Pa. 2011) (holding that privilege does not attach for services or advice of accountant or actuary); *Commonwealth v. Noll*, 662 A.2d 1123, 1126 (Pa. Super. Ct. 1995) ("This privilege protects those disclosures that are necessary to obtain informed legal advice which might not have been made absent the privilege. This privilege *only* applies where the client's ultimate goal is legal advice.") (internal citations omitted).

In sum, Plaintiffs have failed to meet their burden to demonstrate that attorney-client privilege attaches to the penalty information because they have presented *only* perfunctory and conclusory arguments in short briefs without competent evidence in the form of document-by-document argument, a privilege log, affidavits, or other evidence. As stated *supra* Part IV.B.1, a party's "threadbare and conclusory invocations" of privilege are insufficient, *Parisi*, 2017 WL 4403326, at *8, and claims of privilege "must be asserted document by document, rather than as a single, blanket assertion." *Rockwell*, 897 F.2d at 1265; *see Human Tissue*, 255 F.R.D. at 163. Therefore, Plaintiffs cannot withhold the penalty information related to the IRS issue based on nothing more than a conclusory, blanket assertion of attorney-client privilege, and the Court does

not accept Plaintiffs overly broad representation of the holding in the Second Circuit's decision in *Kovel* and those cases that follow *Kovel.*

## C. The Work-Product Doctrine is Inapplicable to the Communications Sought by CBIZ

### 1. Legal Standard

Closely related to the attorney-client privilege is the work-product doctrine, which "is designed to protect material prepared by an attorney acting for his client in anticipation of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) (citation omitted). "The underlying purpose of the work-product doctrine is to shield the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." *Parisi*, 2017 WL 4403326, at *2 (quoting *Barrick v. Holy Spirit Hosp. of Sisters of Christian Charity*, 32 A.3d 800, 812 (Pa. Super. Ct. 2011), *aff'd*, 91 A.3d 680 (Pa. 2014)). "The doctrine promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Id.* (quoting *Barrick*, 32 A.3d at 812).

Pertinent here, courts should decline to apply the work-product doctrine to "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes[.]" *See* Fed. R. Civ. P. 26(b)(3) advisory committee note; *see also Sharp v. Gov't of Virgin Islands*, 77 F. App'x 82, 85-86 (3d Cit. 2003); *Grimsely v. Manitowoc Co., Inc.*, Civil No. 1:15-CV-1275, 2017 WL 2985119, at *10 (M.D. Pa. July 13, 2017). "[A] document must have been created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur and prepared the document to advance the party's

-18-

interest in the successful resolution of that litigation." *Westwood Prod., Inc. v. Great Am. E & S Ins. Co.*, 2011 WL 3329616, at *11 (D.N.J. Aug. 1, 2011).

Furthermore, the "primary motivating purpose behind the creation of the document" must be to "aid in possible future litigation." *Brooks v. Mon River Towing, Inc.*, Civil Action No. 11-1580, 2013 WL 1748334, at *3-*4 (W.D. Pa. Apr. 3, 2013) (holding that the work-product doctrine did not apply to documents "prepared in the ordinary course of business of evaluating Plaintiff's injury, determining if he had a claim, and deciding when and if he could return to work."); *In re: Maxim Integrated Prod., Inc.*, Master Docket Misc. No. 12-244, 2013 WL 12141533, at *5 (W.D. Pa. July 17, 2012) (Conti, C.J.) ("[D]ocuments prepared for other purposes that prove useful in subsequent litigation are not attorney work-product.").

### 2. Analysis

In their briefs, Plaintiffs offer only a few sentences followed by a few citations in furtherance of their argument that the work-product doctrine protects them from disclosing the penalty information in discovery. (*See* ECF Nos. 89, 100.) The Court finds these passing arguments ineffectual and unpersuasive.

In applying the standard stated *supra* Part IV.C.1, the Court holds that Plaintiffs' conclusory statements in their briefs are insufficient to prove that the penalty information they are withholding was created for the purposes of aiding counsel in litigation against CBIZ. To the contrary, based on the information presented to this Court, the Internal Revenue Code and IRS regulations actually required UPMC to request a change in funding method from the IRS and, thus, the documents and communications in question here would have been created or occurred regardless of the instant litigation.

In short, Plaintiffs have failed to show that the penalty information was created for the primary purpose of litigation, and, therefore, Plaintiffs must produce the penalty information to CBIZ.

## V. Conclusion

In sum, the penalty information is relevant and within the scope of discovery and Plaintiffs' have not satisfactorily shown any other basis for refusing to turn over the penalty information to CBIZ. Specifically, Plaintiffs have failed to meet their burden to establish the applicability of attorney-client privilege or the work-product doctrine to the penalty information.

Consequently, for the foregoing reasons, the Court will **GRANT** CBIZ's Motion to Compel (ECF No. 75) and will **ORDER** Plaintiffs to provide the requested documents and communications to CBIZ.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UPMC d/b/a UNIVERSITY OF PITTSBURGH MEDICAL CENTER, and UPMC ALTOONA f/k/a ALTOONA REGIONAL HEALTH SYSTEM, | ) ) ) ) | Case No. 3:16-cv-204 |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CBIZ, INC., CBIZ BENEFITS & INSURANCES SERVICES, INC., and JON S. KETZNER, | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

NOW, this ___29th___ day of ___March___ 2018, upon consideration of Defendants' Motion to Compel (ECF No. 75) and all briefs filed by the parties, and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that Defendants' Motion to Compel (ECF No. 75) is **GRANTED**.

Specifically, it is **ORDERED** that Plaintiffs produce all documents and communications to Defendants' requests numbered 106, 107, and 109-112 within 14 days of the date of this Order, unless that date is extended by agreement of the parties or subsequent order of this Court.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**