## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UPMC d/b/a UNIVERSITY OF PITTSBURGH MEDICAL CENTER, and UPMC ALTOONA f/k/a ALTOONA REGIONAL HEALTH SYSTEM, | ) ) ) ) ) | Case No. 3:16-cv-204 JUDGE KIM R. GIBSON |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CBIZ, INC., CBIZ BENEFITS & INSURANCES SERVICES, INC., and JON S. KETZNER, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case arises from Plaintiff UPMC's ("UPMC") acquisition of Plaintiff UPMC Altoona ("Altoona") (collectively "Plaintiffs")—an acquisition which, according to Plaintiffs, resulted in millions of dollars in damages from Defendants' (collectively "Defendants") negligent understatement of Altoona's pension plan liabilities.  Pending before the Court are the following motions in limine:

- Defendants' "Motion in Limine to Preclude Evidence of UPMC's Corporate Good Acts and Good Character" (ECF No. 266) and brief in support (ECF No. 267), and Plaintiffs' memorandum in opposition (ECF No. 310);

- Defendants' "Motion in Limine to Exclude any Argument, Testimony, or other Evidence on Punitive Damages, or in the Alternative, to Bifurcate Trial" (ECF No. 270) and brief in support (ECF No. 271), and Plaintiffs' memorandum in opposition (ECF No. 311);

- Plaintiffs' "Motion in Limine No. 8 to Exclude use of an Opinion Issued in *In re Greater Southeast Community Hospital Corp.*" (ECF No. 275), Defendants' response in opposition (ECF No. 312), and Plaintiffs' reply (ECF No. 342); and

- Plaintiffs' "Motion in Limine No. 12 to Exclude Evidence Concerning UPMC's Retention of Litigation Counsel" (ECF No. 277), and Defendants' response in opposition (ECF No. 313).

The motions are fully briefed and ripe for disposition.  For the following reasons, the Court:

- **DENIES** Defendants' motion to preclude evidence of UPMC's good acts and character (ECF No. 266);

- **DENIES** Defendants' motion to exclude evidence on punitive damages, or in the alternative to bifurcate trial (ECF No. 270);

- **GRANTS** Plaintiffs' motion to exclude use of an opinion issued in another proceeding (ECF No. 275); and

- **GRANTS** Plaintiffs' motion to exclude evidence concerning its retention of litigation counsel (ECF No. 277).

## II.    Background[1]

The parties filed the instant motions in limine on March 13, 2020.  (ECF Nos. 266, 270, 275, 277).  The responses in opposition were filed on April 10, 2020.  (ECF Nos. 310, 311, 312, 313).  The reply brief to one of the motions was filed on May 8, 2020.  (ECF No. 342).  The Court held oral argument on May 15, 2020.  (ECF No. 347).

---

[1] A detailed description of the factual background of this case can be found in the Court's Memorandum Opinion and Order Denying Summary Judgment.  (ECF No. 252).

### III.      Relevance

Under Rule 402 of the Federal Rules of Evidence, relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 402.  Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence.  Fed. R. Evid. 401.  Rule 401 does not set a high standard for admissibility.  *Hurley v. Atl. City Police Dep't*, 174 F. 3d 95, 109–10 (3d Cir. 1999).  The Third Circuit has explained:

> [R]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Because the rule makes evidence relevant if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has *no* tendency to prove the fact.

*Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992).

Under Rule 403, relevant evidence is inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.  Rule 403 mandates a balancing test, "requiring sensitivity on the part of the trial court to the subtleties of the particular situation."  *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010).  Importantly, "'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.  Virtually all evidence is prejudicial or it isn't material.  The prejudice must be 'unfair.'"  *Carter v. Hewitt*, 617 F.2d 961, 972 n.14 (3d Cir. 1980).  "Unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *McBride v. Petulla*, No. 3:16-cv-256, 2020 WL 1032535, at *1 (W.D. Pa. Mar. 3, 2020) (quoting Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules).

III.    **Discussion**

    **A.   The Court Denies Defendants' Motion to Exclude Evidence of UPMC's Good Acts and Character (ECF No. 266)**

        **1.   The Parties' Arguments**

Defendants argue that the Court should exclude evidence of UPMC's corporate good acts and good character because this evidence is irrelevant and unfairly prejudicial.  (ECF No. 267 at 2).  Specifically, Defendants' seek to exclude evidence that UPMC is: (1) saving lives; (2) treating cancer; (3) conducting medical research; (4) curing diseases; (5) developing new drugs and treatments; and (6) making significant medical contributions.  (*Id.*).  Evidence regarding UPMC's good deeds or character has no probative value on Defendants' liability or Plaintiffs' conduct in this case.  (*Id.* at 4).  This evidence is also unduly prejudicial, confuses the issues, and misleads the jury because this evidence may improperly influence the jury's perception of UPMC.  (*Id.*).

Plaintiffs' respond that they do not intend to introduce the evidence for the purposes Defendants describe.  (ECF No. 310 at 1).  Instead, Plaintiffs intends to offer evidence of the healthcare practice to provide background on UPMC and Altoona, to the extent it relates to their claims.  (*Id.*).  For example, Plaintiffs' intend to offer testimony on the capital spending and foundation commitment to Altoona as part of the affiliation, as well as from Altoona's former President that additional spending cuts would have jeopardized critical services for many people.  (*Id.* at 2).  The Court should therefore deny the motion to exclude this evidence.  (*Id.*).

        **2.   Evidence of UPMC's Healthcare Practices Is Relevant and Plaintiffs Do Not Intend to Offer any Character Evidence of Good Acts**

The Court holds that evidence of UPMC's healthcare practice is admissible because it provides the jury with important background on UPMC and Altoona that is relevant for the jury

to understand the nature of this case and financial considerations of hospitals and healthcare providers.  Defendants' have not shown how the probative value of any of the evidence that Plaintiffs intends to offer is substantially outweighed by the danger of unfair prejudice.  Plaintiffs have stated that they do not intend to offer any of this evidence for an improper character purpose.  If Defendants feel that the testimony at trial crosses an improper line into unfairly prejudicial or improper character evidence, Defendants may object to that evidence at trial.

Accordingly, the Court denies Defendants' Motion to Exclude Evidence of UPMC's Good Acts and Character.

### B. The Court Denies Defendants' Motion to Exclude Evidence on Punitive Damages, or in the Alternative, to Bifurcate Trial (ECF No. 270)

#### 1. The Parties' Arguments

Defendants argue that the Court should preclude evidence relating to punitive damages because Plaintiffs do not have any evidence that can show that they are entitled to such damages. (ECF No. 271 at 2).  Ketzner believed that his actuarial methods and assumptions were sound, meaning that he did not appreciate the risk of harm to Plaintiffs.  (*Id.*).  This good faith belief defeats Plaintiffs' demand for punitive damages.  (*Id.*).  Plaintiffs' assertion that Ketzner failed to disclose his methods and assumptions is not evidence that Ketzner understood that his calculations were wrong.  (*Id.* at 5).  Plaintiffs' assertion that Ketzner worked without peer review is also not relevant because there is no evidence that peer review is required under any of the relevant actuarial rules.  (*Id.*).  Moreover, Defendants could not have acted in conscious disregard of the risks created by UPMC reliance on Ketzner's 2012 pension liability report because Defendants did not discover Ketzner's alleged errors until 2015.  (*Id.* at 2).  In arguing against

punitive damages, Defendants contend that Ketzner lacks the requisite "evil motive" or "reckless indifference to the rights of other" to support such an award. (*Id.* at 3). Further, Plaintiffs alleged reasonable reliance is insufficient. (*Id.* at 7). In the alternative, Defendants request that if Plaintiffs are permitted to seek punitive damages, the Court bifurcate the trial on the issue of punitive damages to avoid prejudice to it. (*Id.* at 11).

Plaintiffs respond that, except for evidence of CBIZ's wealth, they should be allowed to present the evidence supporting punitive damages in their case-in-chief. (ECF No. 311 at 2). This evidence includes: (1) Ketzner's knowing and conscious decision to conceal his made-up, erroneous actuarial assumptions; (2) Ketzner's knowing and conscious use of those same assumptions; (3) CBIZ's  knowing and conscious decision to use an employee – Mike Miller – who lacked any actuarial training or credentials to partner with Ketzner, and then to falsely represent Miller as a "Staff Actuary" to Altoona; (4) CBIZ's knowing and conscious decision to skip peer review, coupled with Ketzner's knowingly false statement in 2013 that his work had undergone "a high level of internal peer review;" and (5) CBIZ's decision to not report Ketzner to professional disciplinary authorities because it wanted to shield itself from liability to UPMC. (*Id.*).

Plaintiffs also contend that in complex cases such as this one, the Court should deny the motion without prejudice and allow them to present their proof, while excluding evidence that is relevant solely to the amount of punitive damages. (*Id.* at 3). Plaintiffs can introduce evidence at trial which can show that Defendants' had a subjective appreciation of a risk posed by their misconduct and consciously disregarded that risk. (*Id.*).

Plaintiffs further argue that the actuarial assumptions that Ketzner employed were not just wrong, they were indefensible. (*Id.* at 6). Plaintiffs continue that none of Defendants' actuarial experts, or any CBIZ employee, will opine that Ketzner's multiple undisclosed assumptions were supportable. (*Id.*). Further, the fact that Ketzner claims that he believed his actions were appropriate does not necessarily lead to the conclusion that he lacked subjective knowledge that his actions were reckless, as the jury is entitled to use circumstantial evidence to determine Ketzner's state of mind. (*Id.* at 7). Plaintiffs also contend that Ketzner consciously hid his assumptions from Altoona and other clients. (*Id.*).

Continuing, Plaintiffs argue that CBIZ's repeated representation that Miller was a trained actuary was intentional or reckless conduct and that it was also reckless for Ketzner to tell Altoona that his actuarial work on Altoona's pension plans had been subjected to a high level of internal peer review, even though CBIZ conducted no peer review of his actuarial work. (*Id.*). Plaintiffs suggest that the jury could find that in falsely reassuring Altoona that his work was subject to peer review, Ketzner understood that he or Miller made errors in his work and deliberately sought to divert Plaintiffs from suspicions about whether that work required closer examination. (*Id.* at 9).

Plaintiffs argue that bifurcation is inappropriate in this case because all of the evidence that is relevant for punitive damages, except for wealth, is also relevant to liability. (*Id.* at 11). Plaintiffs contend that the consideration of punitive damages need not be deferred until Defendants' liability is established. (*Id.* at 12).

2.   **Except for CBIZ's Wealth, the Jury May Consider Evidence Relevant to Punitive Damages that is also Relevant to Liability and Damages**

The Court holds that Plaintiffs may present evidence that is relevant to punitive damages so long as it relates to liability and compensatory damages.  A punitive damages claim must be supported by evidence sufficient to establish that: (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed; and (2) he acted in conscious disregard of that risk.  *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 360 (3d Cir. 2015) (citing *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005)).  Courts frequently decline to grant pretrial motions to exclude evidence related to punitive damages without prejudice so that the moving party may renew any objections to punitive damages claims at trial based upon a fully developed factual record.  *R.D. v. Shohola, Inc.*, No. 3:16-cv-01056, 2019 WL 6211365, at *4 (M.D. Pa. Nov. 20, 2019).

The Court agrees with the approach taken by other courts and reserves its ruling on whether the jury may be charged with a punitive damages claim until the end of trial with a fully developed factual record.  Plaintiffs may present evidence that is relevant both to liability and punitive damages during their case-in-chief.  Once Plaintiffs have presented all evidence for their case-in-chief, except evidence related solely to the punitive damages claim, and prior to resting, Plaintiffs shall inform the Court as such.  Defendants may then move to exclude the punitive damages claim.  If the Court denies the motion, Plaintiffs may then introduce evidence solely related to punitive damages.

Accordingly, the Court denies Defendants' motion.

3. **The Court Denies Defendants' Request in the Alternative to Bifurcate Trial**

The Court holds that bifurcating trial into a liability phase and punitive phase is not in the best interests of judicial economy and that not bifurcating will not prejudice the parties. A court may order a separate trial on separate claims "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). The decision to bifurcate is left to the trial court's discretion after weighing "the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 122 (3d Cir. 1984). Courts decline to bifurcate when a liability claim and claim for punitive damages have significant overlapping evidence. *See, e.g., Talley v. Burt*, No. 2:16-cv-1318, 2019 WL 5842857, at *8 (W.D. Pa. Nov. 7, 2019).

Here, the evidence for Plaintiffs' liability claims and punitive damages claims will likely have significant overlapping evidence. Evidence which can show Defendants' negligence, which is relevant to Plaintiffs' liability claims, can also be used to show Defendants' knowledge or recklessness, which is relevant to Plaintiffs' punitive damages claim. It would be inefficient to bifurcate due to the significant overlapping evidence.

Accordingly, the Court denies Defendants' request for bifurcation.

C. **The Court Grants Plaintiffs' Motion to Exclude use of an Opinion Issued in *In re Greater Southeast Community Hospital Corporation* (ECF No. 275)**

1. **The Parties' Arguments**

Plaintiffs' asserts that the Court should prohibit the use of the opinion issued by the United States Bankruptcy Court for the District of Columbia in *In re Greater Southeast Community Hospital Corporation* ("Southeast Opinion"). (ECF No 275). Anticipating that Defendants will

attempt to use the Southeast Opinion to impeach UPMC's expert witness Demchick, Plaintiffs argue that the Southeast Opinion is irrelevant to this case and unfairly prejudicial (*Id.* at 2–3).

Defendants responds that they should be permitted to probe Demchick's credibility, including his qualifications, experience, and prior opinions.  (ECF No. 312 at 1).   Further, Defendants seeks to cross-examine Demchick about his experience, including his prior expert opinions.  (*Id.* at 4).

### 2.  The Opinion Issued in *In re Greater Southeast Community Hospital Corporation* should be Excluded

The Court holds that the Southeast Opinion should be excluded.  The Southeast Opinion, issued by Bankruptcy Judge S. Martin Teel, Jr., is not relevant to the claims in this case.  Even if the Southeast Opinion were relevant, it appears that it would confuse the issues and mislead the jury.  *See* Fed. R. Evid. 403.   However, Defendants are certainly free to probe Demchick's qualifications, experience, and prior opinions.

Accordingly, the Court grants Plaintiffs' motion to exclude the *Southeast* Opinion.

### D.  The Court Grants Plaintiffs' Motion to Exclude Evidence Concerning the Retention of Litigation Counsel (ECF No. 277)

#### 1.  The Parties' Arguments

Plaintiffs asserts that the Court should exclude evidence relating to the retention of litigation counsel in 2015 because this evidence is not probative of any of the claims or defenses in this case.  (ECF No. 277 at 1–2).  Additionally, the evidence is not relevant to punitive damages because the jury looks only at the conduct of the defendant, not the plaintiff.   (*Id.* at 3). Introducing this evidence would unfairly prejudice Plaintiffs and waste trial time.  (*Id.*).

Defendants respond that UPMC's retention of litigation counsel is relevant because: (1) it provides key background information regarding the recalculation of Altoona's funding obligations; (2) UPMC used the information CBIZ provided to it as a basis for filing this case against Defendants; and (3) punitive damages. (ECF No. 313 at 1). The evidence shows that Defendants cooperated with UPMC after discovery of the alleged funding dispute, which rebuts Plaintiffs' claim that CBIZ and Ketzner did not fully cooperate with UPMC. (*Id.* at 3). UPMC's actions are relevant for the jury to consider when deciding the punitive damages issue. (*Id.*). Plaintiffs will not suffer any prejudice if this evidence is introduced to the jury. (*Id.* at 4).

### 2.  Evidence Concerning the Date of UPMC's Retention of Litigation Counsel Is Irrelevant

The Court holds that evidence of when UPMC retained counsel in this matter is irrelevant because it has no tendency to make a fact of consequence more or less likely. The fact that UPMC retained counsel in 2015 has no bearing on any of the relevant factual issues concerning the negligence of CBIZ or UPMC during the time relevant to the Altoona affiliation, which occurred before 2015. Nor is UPMC's retention of litigation counsel relevant for punitive damages. Punitive damages, if imposed, are based on the defendant's conduct alone. *Loughman v. Consol- Pa. Coal Co.*, 6 F.3d 88, 101 (3d Cir. 1993); Pa. Suggested Standard Civil Jury Instructions § 8.20. UPMC's retention of counsel, therefore, is not relevant to whether the jury should award punitive damages to UPMC in this case. Further, evidence relating to the retention of counsel would likely confuse the issues and mislead the jury. *See* Fed. R. Evid. 403.

Accordingly, the Court grants Plaintiffs' motion to exclude evidence relating to the retention of litigation counsel.

## IV.     Conclusion

For the forgoing reasons, the Court denies Defendants' motion to preclude evidence of UPMC's good acts and character, denies Defendants' motion to exclude evidence on punitive damages, or in the alternative to bifurcate trial, grants Plaintiffs' motion to exclude use of an opinion issued in another proceeding, and grants Plaintiffs' motion to exclude evidence concerning its retention of litigation counsel.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UPMC d/b/a UNIVERSITY OF PITTSBURGH MEDICAL CENTER, and UPMC ALTOONA f/k/a ALTOONA REGIONAL HEALTH SYSTEM, | ) ) ) ) | Case No. 3:16-cv-204 |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CBIZ, INC., CBIZ BENEFITS & INSURANCES SERVICES, INC., and JON S. KETZNER, | ) ) ) | |
| Defendants. | ) ) | |

### ORDER

**AND NOW**, this _29th_ day of March, 2021, upon consideration of "Defendants' Motion in Limine to Preclude Evidence of UPMC's Corporate Good Acts and Good Character" (ECF No. 266), "Defendants' Motion in Limine to Exclude any Argument, Testimony, or Other Evidence on Punitive Damages, or in the Alternative, to Bifurcate Trial" (ECF No. 270), "Plaintiffs' Motion in Limine No. 8 to Exclude use of an Opinion Issued in *In re Greater Southeast Community Hospital Corp.*" (ECF No. 275), and "Plaintiffs Motion in Limine No. 12 to Exclude Evidence Concerning UPMC's Retention of Litigation Counsel" (ECF No. 277), and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that:

- "Defendants' Motion in Limine to Preclude Evidence of UPMC's Corporate Good Acts and Good Character" (ECF No. 266) is **DENIED**;

- "Defendants' Motion in Limine to Exclude any Argument, Testimony, or Other Evidence on Punitive Damages, or in the Alternative, to Bifurcate Trial" (ECF No. 270) is **DENIED**;

- "Plaintiffs' Motion in Limine No. 8 to Exclude use of an Opinion Issued in *In re Greater Southeast Community Hospital Corp.*" (ECF No. 275) is **GRANTED**; and

- "Plaintiffs Motion in Limine No. 12 to Exclude Evidence Concerning UPMC's Retention of Litigation Counsel" (ECF No. 277) is **GRANTED**.


**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**